1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BROOKLYNN C Clark,

              Plaintiff,

     v.

WASHINGTON STATE DEPARTMENT

OF HEALTH; ANGIE SCHULZ; SCOTT

BRAMHALL; LORI TARGUS; TINA

CRAWFORD; ERICA BROWN; AND

KEVIN TAYLOR,

              Defendants.

Case No. 2:23-cv-01558-TMC

ORDER ON MOTION TO DISMISS

Pro se Plaintiff Brooklyn C. Clark filed this lawsuit alleging that the Washington State Department of Health, through several of its employees, discriminated against her based on race and gender identity while processing her application for an emergency medical technician license. Before the Court is Defendants' motion to dismiss, seeking dismissal of all of Plaintiff Brooklynn C. Clark's claims in this lawsuit, Dkt. 20; Ms. Clark's motion for appointment of counsel, Dkt. 21; and Ms. Clark's motion for service by the U.S. Marshals, Dkt. 23. For the following reasons, the motion to dismiss is GRANTED IN PART AND DENIED IN PART, the

motion for appointment of counsel is DENIED, and the motion for service by the Marshals is DENIED AS MOOT. The Court also directs the clerk's office to email copies of the summons and complaint to the Washington Department of Health and mail waiver of service packets to each individually named defendant as set forth further below.

## I.    BACKGROUND

Ms. Clark initiated this case by filing a motion to proceed in forma pauperis (IFP) on October 6, 2023. Dkt. 1. On October 13, 2023, U.S. Magistrate Judge Brian A. Tsuchida granted the motion to proceed IFP and Ms. Clark's complaint was then filed. Dkt. 4, 5.

Ms. Clark alleges that she had applied to the Washington Department of Health ("the Department") for a "license and/or certification" to work as an emergency medical technician in the State of Washington, and that the Department and six of its employees unlawfully discriminated against her by withholding the certification because of her race and/or gender identity in violation of the Fifth Amendment to the U.S. Constitution, Title VII of the Civil Rights Act of 1964, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60. Dkt. 5 at 4, 7–9. She brings her claim for a violation of the Fifth Amendment under 42 U.S.C. § 1983. *See id.* at 4.

Ms. Clark's allegations concern her attempts to become certified as an Emergency Medical Technician ("EMT") in Washington. *See generally id.* Ms. Clark, who is transgender, had "disclose[d] her previous name and gender" to the Department as part of her application. *Id.* at 7. Ms. Clark alleges that, on July 28, 2023, after submitting "her fingerprints for a criminal history background check" for EMT certification, the Department asked her to provide information regarding "dismissed [criminal] matters out of Texas." *Id.* Ms. Clark called the Department for clarification and spoke with Defendant Kevin Taylor and told him that the criminal matters the Department was requesting had been "dismissed" and "were under an Order

of Non-Disclosure." *Id.* Taylor "insisted" that Ms. Clark provide "documents" concerning the Texas matters. *Id.* At the end of the phone call, Taylor misgendered Ms. Clark "by calling her 'Sir' after looking up her application on his computer." *Id.* Ms. Clark produced the documents that Mr. Taylor requested, which "show[ed] that the matters discussed with Mr. Taylor were dismissed and under an Order of Non-disclosure." *See id.*

The Department still did not issue Ms. Clark the certification, and she continued to call the Department several times during August 2023, speaking with Defendant Angie Shulz. *Id.* at 7–8. According to Ms. Clark, Shulz refused to tell Ms. Clark why her certification was not approved and what additional information the Department needed to approve her application. *See id.* During one of these calls, Shulz also misgendered Ms. Clark by referring to her as "Sir." *Id.* at 7. Ms. Clark alleges that Shulz was "rude, combative, and nasty" towards Ms. Clark and "refused to put [Ms. Clark] in contact with . . . Defendant Erica Brown and/or the decision maker(s) who were withholding [Ms. Clark's] EMT License and/or certification." *Id.* at 8.

On August 22, 2023, Defendant Tina Crawford, a health services consultant with the Department, sent Ms. Clark a letter informing her that it had "the authority to investigate complaints against healthcare providers." *Id.* at 8. Ms. Clark's complaint does not provide additional context for the letter, but states that she "was unaware of any complaints against healthcare providers and believed that the DOH was trying to find a disqualification that simply [did] not exist." *Id.* Ms. Clark made another phone call to the Department and spoke with Defendant Scott Bramhall, a healthcare investigator, who refused to "provide any updates or information about [Ms. Clark's] application." *Id.* On September 15, 2023, Bramhall sent Ms. Clark a letter "threatening [her] with fines and/or other sanctions if she [did] not produce records of convictions that she [did] not have." *Id.* at 9.

1
2
3
4
5
6
7
8
9

Ms. Clark also alleges that she has applied for and received an EMT "license and/or certification" from the state of Oregon. *Id.* at 8. The state of Oregon approved her application and issued the certification within "2–3 weeks," and, according to Ms. Clark, completed her background check without discovering any convictions. *Id.* The Department "requested proof of Oregon EMT licensure/certification on or about September 11, 2023," which Ms. Clark provided. *Id.* Ms. Clark also states that she has passed a previous background check, conducted by the Washington State Patrol to work as a volunteer firefighter in Washington. *Id.* at 9. On September 26, 2023, Ms. Clark sent a copy of the Washington State Police's background check to the Department but "received no response." *Id.*

10
11
12
13
14

Ms. Clark states that she "believes the Defendants actions are motivated by either illegal racial or gender discrimination as there are no lawful reasons to withhold her [EMT] license and/or certification." *Id.* For relief, she seeks "an immediate Order forcing the Defendants to either provide proof of a disqualifying factor or immediately issue" an EMT certification. *Id.* She also requests compensatory and punitive damages. *Id.*

15
16
17
18

Defendants filed this motion on February 22, 2024. Dkt. 20. Ms. Clark responded and Defendants replied. Dkts. 22, 24.[1] Ms. Clark filed her motion for appointment of counsel on March 1, 2024, and her motion to reissue summons on March 13, 2024. Dkts. 21, 23. All motions are ripe for the Court's consideration.

19

## II.   DISCUSSION

20
21
22
23
24

---

[1] The Court has not considered Ms. Clark's additional response filed on March 27, 2024, which appears to be an unauthorized surreply. Dkt. 26. The local rules of this District only allow for a motion, response brief from the party opposing the motion, and a reply brief from the moving party. *See* Local Civil Rule 7(b). A copy of the Local Civil Rules is available online at the Western District of Washington's website. *See* Civil Rules, https://www.wawd.uscourts.gov/sites/wawd/files/042624 WAWD Local Civil Rules - Clean.pdf.

ORDER ON MOTION TO DISMISS - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

A.      **Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Court also "has a duty to construe *pro se* pleadings liberally," so "the allegations made in *pro se* complaints are held to a less stringent standard than those made in formal pleadings drafted by professional attorneys." *Garavito v. JPMorgan Chase Bank, N.A.*, No. SACV 14-01612-DOC, 2015 WL 12683966, at *3 (C.D. Cal. Jan. 16, 2015) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)).

    B.    **Analysis**

        1.    *Eleventh Amendment Immunity*

Ms. Clark sues the Washington Department of Health and individual employees of the Department. *See* Dkt. 5 at 2–4, 7–9. Defendants argue that her claims against all Defendants must be dismissed for lack of subject matter jurisdiction because they are immune from suit under the Eleventh Amendment for her federal claims and under RCW 18.130.300 for her state claims. The Court addresses Defendants' immunity for each claim separately. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."), *superseded by statute on other grounds*.

        a.  *Immunity from State Law Claims*

Defendants argue that:

Individuals acting on behalf of the Department of Health secretary or members of Department of Health boards or commissions are immune from suit in any civil or criminal action based on official acts performed in the course of their duties. RCW 18.130.300. The individually named defendants in this suit were acting within their official capacity. As pled, the actions described are connected to their duties as state actors. Therefore they are immune from suit in any court.

Dkt. 21 at 5.

RCW 18.130.300 is part of the Washington Uniform Disciplinary Act ("UDA"), "which provides standardized procedures for the enforcement of laws for licensed health and health-related professionals." *Janaszak v. State*, 173 Wn. App. 703, 714, 297 P.3d 723 (2013). The provision reads: "The secretary, members of the boards or commissions, or individuals acting on their behalf are immune from suit in any action, civil or criminal, based on any disciplinary proceedings or other official acts performed in the course of their duties." RCW 18.130.300. This statute provides absolute immunity. *Janaszak*, 173 Wn. App. at 719.

In *Janaszak*, the Washington Court of Appeals explained that "[t]he legislature authorized the secretary to employ investigative, administrative, and clerical staff to enforce the [UDH]." 173 Wn. App. at 718. The court held that the statute's absolute immunity extends to Department of Health employees acting in the scope of their duties. *See id.* at 714–15, 719. A later decision of the Court of Appeals further clarified that the immunity applies to both "investigative and administrative work of DOH staff." *Hiesterman v. Dept. of Health*, 24 Wn. App. 2d 907, 918, 524 P.3d 693 (Wash. Ct. App. 2022). The statute provides immunity for common law tort claims, not just claims for violations of the UDH. *Delashaw v. Roberts*, No. C18-1850JLR, 2020 WL 4922203, at *13 (W.D. Wash. Aug. 21, 2020) (collecting cases).

The Department certifies emergency medical technicians in the state of Washington. *See* RCW 18.73.081(3)(b) (providing that "the secretary" is responsible for "[p]rescrib[ing] minimum standards for first responder and emergency medical technician training including . . . [p]rocedures for provisional certification, certification, recertification, decertification, or modification of certificates"); RCW 18.73.030 (defining "secretary" in the statute as "the secretary of the department of health"); Dkt. 5 at 7 (describing Defendants' alleged withholding of Ms. Clark's license and/or certification).

While the Court has not discovered any cases finding immunity for the Department's certification duties with respect to EMTs, the above cases and broad language of the statute support a finding that the provision covers the actions at issue in this case. *See* RCW 18.130.300(1) (providing immunity "from suit in *any action*, civil or criminal, based on any disciplinary proceedings *or other official acts performed in the course of their duties*." (emphasis added)); *see also Delashaw*, 2020 WL 4922203, at *13 (finding immunity from tort claims concerning the suspension of a doctor's license); *Dang v. Johnson*, No. 3:21-cv-05544-RJB, 2023 WL 4106060, at *11 (W.D. Wash. June 21, 2023) (holding that UDH immunity barred a plaintiff's WLAD and Washington Consumer Protection Act claims). Ms. Clark argues in her response to Defendants' motion that Defendants were not acting within the scope of their official duties in allegedly discriminating against her:

> [T]he Defendants in this matter can be held personally liable for intentional, illegal acts that are not within the scope of their job duties. This case is about "[rogue]" employees of the DOH deciding on their own and without good cause to discriminate and/or provide disparate treatment to a black, transgender woman because of her race and/or gender; and with no good reason available or offered.

Dkt. 26 at 4. But a defendant's alleged conduct is not outside the scope of their official duties for absolute immunity purposes simply because it was intentional and/or illegal. *Cf. McCarthy v. Clark County*, 193 Wn. App. 314, 337, 376 P.3d 1127 (2016) ("Absolute immunity means that a prosecutor is shielded from liability even when he or she engages in willful misconduct."). Ms. Clark's state law claims are barred by RCW 18.130.300(1) and must be dismissed with prejudice.

### b. Immunity from Federal Claims

Defendants also argue that they are immune from suit for all of Ms. Clark's federal claims under the Eleventh Amendment to the U.S. Constitution. Dkt. 20 at 3. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment "bars a citizen from bringing a suit against their own state in federal court." *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir. 1995) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890)). This immunity extends to state agencies and their employees acting in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A plaintiff can overcome the Eleventh Amendment bar, however, if the state has consented to waive its immunity or if Congress has abrogated the state's immunity. *Tron-Haukebo v. Wash. State DOT*, No. C23-5691JLR, 2023 WL 7183573, at *2 (W.D. Wash. Nov. 1, 2023) (citing *Micomonaco*, 45 F.3d at 319). In determining whether claims are barred by the Eleventh Amendment, each claim is examined separately. *Pennhurst*, 465 U.S. at 121.

Generally, "Washington has not consented to waive its Eleventh Amendment immunity to claims brought in federal court." *Tron-Haukebo*, 2023 WL 7183573, at *2 (citing *Rains v. State*, 100 Wn.2d 660, 674 P.2d 165, 170 (Wash. 1983)). Congress also has not abrogated states' immunity to suits brought under Section 1983, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), and state agencies and officials acting in their official capacities are immune from suit under the statute. *Will*, 491 U.S. at 70–71. At the same time, plaintiffs may sue state officials in their individual capacities under Section 1983. *Hafer*, 502 U.S. at 31.

Defendants argue that the Department itself is immune from suits brought under section 1983. Dkt. 20 at 4. They also argue that "[a]lthough Ms. Clark does not specify in her complaint whether the individually named defendants in the suit are being sued in their individual or official capacity, given the nature of the allegations contained in the complaint, their actions were within the scope of their employment with the Department of Health." Dkt. 20 at 5.

Defendants are correct that the Department itself is immune from suits brought under section 1983, since there is no indication it has waived this immunity. *Recinos v. Wash. State Nursing Comm'n*, No. 3:23-CV-5762-DGE, 2023 WL 6850201, at *2 (W.D. Wash. Sept. 15, 2023). The Court therefore dismisses Ms. Clark's Section 1983 claim against the Department with prejudice. *See Doe v. Regents of the University of California*, 891 F.3d 1147, 1153-54 n.6 (9th Cir. 2018) (holding that dismissal with prejudice is proper when claims are barred by Eleventh Amendment).

But Defendants are incorrect when they argue that the Court must find Ms. Clark is suing the individually named defendants in their official capacities—even though she never discusses capacity in the complaint—and therefore dismiss Ms. Clark's claims against them as well. Ninth Circuit precedent requires the opposite result:

> Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities. Any other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred.

*Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994) (citing *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990), *cert. denied*, 502 U.S. 967 (1991)); *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers are subject to § 1983 liability for damages in their *personal* capacities, however, even when the conduct in question relates to their official duties."). In line with this precedent, the Court presumes that Ms. Clark's Section 1983 claims against the individually named defendants are brought against them in their individual capacities. These claims therefore are not barred by the Eleventh Amendment.

In addition, Congress *has* abrogated states' immunity, including for "their subdivisions[] or their officers," under the Eleventh Amendment for claims brought under Title VII. *Sosa v.*

1    *Hiraoka*, 920 F.2d 1451, 1461 (9th Cir. 1990) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456

2    (1976)). None of Ms. Clark's Title VII claims are barred by the Eleventh Amendment. The case

3    Defendants cited for this argument, *Braunstein v. Arizona Department of Transportation*, 683

4    F.3d 1177 (9th Cir. 2012), says nothing of the sort, and the Court cautions counsel for

5    Defendants that any future frivolous legal arguments may lead to an order to show cause why the

6    Court should not impose sanctions under Federal Rule of Civil Procedure 11(c).

7                    2.      *Whether Ms. Clark has Stated a Claim Upon Which Relief May be*
                            *Granted for Her Federal Claims*
8
                        a.  *Section 1983*
9
         Ms. Clark's section 1983 claim alleges that Defendants discriminated against her on the
10
     basis of race and gender in violation of the Fifth Amendment to the United States Constitution.
11
     *See* Dkt. 5 at 4, 7–9. Claims for violations of the Fifth Amendment may only be brought against
12
     federal government officials, not state officials, while claims against states are cognizable under
13
     the Fourteenth Amendment. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir.
14
     2001) (dismissing Fifth Amendment Due Process and Equal Protection claims against the City of
15
     Los Angeles because defendants were state, not federal actors), *overruled on other grounds*
16
     *by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see Castillo v. McFadden*,
17
     399 F.3d 993, 1002 n.5 (9th Cir. 2005) (explaining that "[t]he Fifth Amendment prohibits the
18
     federal government from depriving persons of due process, while the Fourteenth
19
     Amendment explicitly prohibits deprivations without due process by the several States."). But
20
     given that the Court must construe Ms. Clark's pro se complaint liberally, the Court will treat the
21
     claim as one under the Fourteenth Amendment. *See United States v. Rodriguez-Lara*, 421 F.3d
22
     932, 937 n.2 (9th Cir. 2005) (treating pro se plaintiff's section 1983 claim alleging a violation of
23

24

the Fourteenth Amendment by federal government officials as arising under the Fifth

Amendment based on rule that courts must liberally construe pro se complaints).

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from

denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV § 1. The clause "is essentially a direction that all persons similarly situated should

be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

To survive a motion to dismiss, plaintiffs raising these claims must allege "intentional unlawful

discrimination or allege facts that are at least susceptible of an inference of discriminatory intent"

in their complaints. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir.

1998).

An equal protection claim can be established in one of two ways: a "class-based" theory

or a "class-of-one" theory. *Garcia v. City and County of Honolulu*, No. 18-00100 ACK-KSC,

2018 WL 6028691, at *10 (D. Hawaii Nov. 16, 2018); *see Engquist v. Or. Dep't of Agric.*, 553

U.S. 591, 601 (2008) (explaining that "equal protection jurisprudence has typically been

concerned with governmental classifications that affect some groups of citizens differently than

others" but that "an equal protection claim can in some circumstances be sustained even if the

plaintiff has not alleged class-based discrimination, but instead claims that she has been

irrationally singled out as a so-called 'class of one'"). A "class-based" theory alleges that the

defendant discriminated against the plaintiff on the basis of her membership in an "identifiable

class," *see Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134-37 (9th Cir. 2003),

while a "class-of-one" theory alleges that the plaintiff "has been intentionally treated differently

from others similarly situated and that there is no rational basis for the difference in treatment,"

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium). Ms. Clark's complaint

states that she "believes the Defendants['] actions are motivated by either illegal racial or gender discrimination." Dkt. 5 at 9. This is a "class-based" theory.

Defendants' arguments regarding the merits of Ms. Clark's claims are conclusory and are made without legal citation. They merely restate Ms. Clark's allegations and then conclude: "Ms. Clark expresses a belief that the defendants' actions were motivated by racial or gender discrimination but alleges no facts supporting that belief. Taking every pled fact in Ms. Clark's complaint, there is no valid claim for which relief can be granted and the complaint should be dismissed with prejudice." Dkt. 20 at 7–8. As a preliminary matter, the Court does not regard this briefing as sufficient to sustain a motion to dismiss. Defendants do not even identify the elements of Ms. Clark's claims, much less explain why her allegations, construed liberally and with all reasonable inferences drawn in her favor, are insufficient to plausibly suggest an entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Ms. Clark's allegations are sufficient to plausibly state a section 1983 equal protection claim at the pleading stage. "The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose." *Ballou v. McElvain*, 29 F.4th 413, 426 (9th Cir. 2022). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). "Discriminatory intent may be proved by direct or indirect evidence." *FDIC v.*

*Henderson*, 940 F.2d 465, 471 (9th Cir. 1991). Moreover, beyond proving discriminatory intent, "there is no specific test that an equal protection plaintiff is required to meet." *Id.*[2]

The Court disagrees with Defendants' conclusory argument that Ms. Clark "alleges no facts supporting [her] belief" that Defendants discriminated against her based on her race and gender identity. Ms. Clark, a Black transgender woman, has alleged that (1) she was required to disclose her previous name/gender; (2) even after she provided documents showing that the matters in Texas were dismissed and sealed, Department employees insisted she provide documents she did not have and had never been asked to provide when going through similar criminal background checks in Oregon and Washington; (3) the Department employees would not explain why they needed the additional documents; and (4) on multiple occasions, the employees she spoke with expressed hostility to her and misgendered her. Drawing reasonable inferences in her favor —and construing the pro se complaint liberally—Ms. Clark alleges that Defendants treated her differently than others have in similar situations and in a manner not justified by the Department's own procedures, all while refusing to provide a legitimate explanation for their conduct and with some employees showing discriminatory animus by misgendering her. These allegations are not conclusory, and the Court finds that they are sufficient to raise a plausible inference of discriminatory intent at the pleading stage, especially in light of Defendants' failure to point to specific deficiencies.

    *b.  Title VII*

---

[2] While the Equal Protection Clause generally prohibits the unequal treatment of similarly situated people, *see City of Cleburne*, 473 U.S. at 439, plaintiffs need not plead the existence of a similarly situated group that is being treated differently to show discriminatory intent. *Ballou*, 29 F.4th at 426 ("The existence of a comparator is not a prerequisite to stating a disparate treatment claim under the Fourteenth Amendment. To the contrary, comparator evidence in disparate treatment claims can, but need not, be used to support a finding of a discriminatory motive.").

Defendants briefing offers only conclusory arguments regarding Ms. Clark's "discrimination claims." Dkt. 20 at 7. The Court's reasoning above regarding this deficiency applies to her Title VII claim as well.

The Court also finds that Ms. Clark's allegations are sufficient to withstand a motion to dismiss. Title VII prohibits employers from discriminating against any individual because of their "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).[3] At the motion to dismiss stage, a plaintiff raising a Title VII claim "need not establish a prima facie case of sex or gender discrimination." *Hostetler v. Wormuth*, No. 22-cv-03605-JD, 2023 WL 6795411, at *2 (N.D. Cal. Oct. 12, 2023) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)). But they must allege "nonconclusory allegations plausibly linking the [adverse] action to discrimination." *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019). The Court incorporates its reasoning regarding Ms. Clark's section 1983 claim here. Ms. Clark has provided nonconclusory allegations that plausibly give rise to an inference that the withholding of her EMT certification was discriminatory.

3.   *Service of Process*

Defendants also argue that Ms. Clark's case must be dismissed because service of process of the summons and Ms. Clark's complaint by the U.S. Marshals was improper under Federal Rule of Civil Procedure 4(j) and Washington state law. Under Rule 4(j)(2),

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: delivering a copy of the summons and of the complaint to its chief executive officer; or serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

---

[3] The Court does not consider Defendants' argument that Ms. Clark never had an employer-employee relationship with the Department because it was raised for the first time in the Department's reply brief. Dkt. 24 at 5.

Washington law provides that service upon the state may be accomplished "in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general." RCW 4.92.020. Defendants appear to be correct that service did not comply with these requirements, since it was delivered to a program specialist, not an assistant attorney general. *See generally* Dkt. 17.

However, the Court finds that dismissal for failure to properly serve process is not justified and that Defendants should be given an opportunity to waive service of process at this stage of the litigation. Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

 "Courts apply a 'liberal and flexible construction' of the service rules, particularly where a pro se plaintiff is involved." *Tanner v. Phillips*, 2014 U.S. Dist. LEXIS 154653, at *3 (D. Or. Oct. 28, 2014) (citing *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984)). "Where service of process is insufficient, the court has broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant." *Id.* (citing *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006)). Courts need not dismiss for failure to serve process if "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." *Borzeka*, 739 F.2d at 447. Rule 4 provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Here, Defendants have made an appearance in this lawsuit and do not argue that they did

not receive actual notice or that they would suffer any prejudice from the defect in service. The

defect was "technical," and Ms. Clark would be prejudiced if she had to refile her case. *See*

*Tanner*, 2014 U.S. Dist. LEXIS 154653, at *4; *Estrada v. L.V. Metro. Police Dep't*, 2023 U.S.

Dist. LEXIS 127712, at *3 (D. Nev. July 24, 2023) ("As Estrada is proceeding pro se and in

forma pauperis, it would be prejudicial to require him to pursue his allegations in a new

complaint due to a curable defect."). "Good cause" exists to provide additional time for service

under Rule 4 where a pro se plaintiff "both made a reasonable effort to complete service within

the proscribed time and [their] attempt gave the defendant actual notice of the lawsuit." *See Carr*

*v. Naval Base Kitsap Bremerton*, 2020 U.S. Dist. LEXIS 171097, at *4 (W.D. Wash. Sept. 17,

2020) (first citing *Boudette v. Barnette* 923 F.2d 754, 755 (9th Cir. 1991); then citing *Borzeka*,

739 F.2d at 447). Ms. Clark filed two motions to allow service by the U.S. Marshals pursuant to

Rule 4(c)(3) within 90 days of filing her complaint, *see* Dkts. 5, 10, 14, and Defendants received

actual notice of the lawsuit.[4]

In this posture, where Ms. Clark has made a reasonable effort to complete service and the

Court has an obligation under Rule 4(c)(3) to order service on Ms. Clark's behalf, the Court will

re-serve the summons and complaint on the State and send waiver forms to the individual

Defendants. *See Jenrett v. Clark Cnty. Sch. Dist.*, No. 2:24-cv-00002-APG-NJK, 2024 U.S. Dist.

LEXIS 80174, at *2–3 (D. Nev. May 2, 2024) ("Defendants with notice of a case who are

subject to service have a duty to avoid unnecessary costs of service. Rule 4(d) of the Federal

Rules of Civil Procedure provides for waiver of service so that the burden of service can be

---

[4] The Court denied Ms. Clark's first motion because it contained an incorrect case caption and
case number. Dkt. 12. The Court granted her leave to refile the motion, and she did so promptly
ten days later. Dkt. 14. The Court then granted the second motion. Dkt. 16.

eliminated. Courts are particularly reluctant in the in forma pauperis context to require the expenditure of government resources for service by the United States Marshal when there appears to be no practical reason for it." (citing *Estate of Darulis v. Garate*, 401 F.3d 1060, 1063 (9th Cir. 2005)).

The Clerk is directed to (1) email a copy of the complaint and summons for the Washington State Department of Health, along with a copy of this order, to serviceATG@atg.wa.gov; and (2) send a copy of plaintiff's complaint, a copy of this Order, two copies of the notice of lawsuit and request for waiver of service of summons, and a waiver of service of summons, by first class mail with a return envelope, postage prepaid, addressed to the Clerk's Office, to the individually named defendants, in the care of defense counsel at the address listed in their notice of appearance.

Defendant(s) shall have thirty (30) days within which to return the enclosed waiver of service of summons. A defendant who fails to timely return the signed waiver will be personally served by the U.S. Marshals and may be required to pay the full costs of such service, pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure.

4. *Motion for Appointment of Counsel*

Ms. Clark also requests that the Court appoint her counsel. Dkt. 21. This is Ms. Clark's second such request; the Court previously denied her first motion. Dkts. 7, 13.

There is generally "no constitutional right to counsel in a civil case." *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038–39 (9th Cir. 2021) (internal citation omitted). But in employment discrimination cases arising under Title VII of the 1964 Civil Rights Act, the Court may appoint counsel "upon application by the complainant and in such circumstances as the court may deem just." 42 U.S.C. § 2000e-5(f)(1). When considering a request for counsel for Title VII claims, the Court assesses the applicant's financial resources, efforts the applicant has

already made to secure counsel, and whether the claim has merit. *Bradshaw v. Zoological Soc'y of San Diego*, 662 F.2d 1301, 1318 (9th Cir. 1981). For § 1983 claims, the Court asks whether "exceptional circumstances" exist that justify granting the request for counsel. *Amezquita v. Hough*, No. 21-56059, 2023 WL 4105307, at *2 (9th Cir. June 21, 2023) (quoting *U.S. ex rel. Gardner v. Madden*, 352 F.2d 792, 793 (9th Cir. 1965)).

The Court denied Ms. Clark's first motion for appointment of counsel as to her Title VII claim because, while the first factor weighed in her favor given her IFP status, she had only contacted "4–6 law offices" in search of an attorney and it was too early in the litigation to determine whether her claims had merit. Dkt. 13 at 3. The Court encouraged Ms. Clark to make additional efforts to secure counsel on her own. *Id.* As to her Section 1983 claim, the Court held that "there are currently no "exceptional circumstances" justifying appointment of counsel" and that "Ms. Clark's pleadings and filings thus far show an ability to articulate her claims and it is too early in the case for the Court to find a likelihood of success on the merits." *Id.*

Ms. Clark informs the Court in her current request that she has now contacted "at least [ten] lawyers and contacted others via email or contact me forms" but still has not been able to retain counsel. Dkt. 21 at 1. While the Court appreciates Ms. Clark's continued efforts to retain counsel on her own, it still finds that appointment of counsel is inappropriate under the Title VII test at this time given that she has only contacted a few additional attorneys since her last motion. In the same vein, the Court rejects her request under the Section 1983 test since she has continued to show an ability to articulate her claims (and conduct legal research).

Accordingly, Ms. Clark's motion for appointment of counsel (Dkt. 21) is DENIED. This does not prevent Ms. Clark from bringing another motion for appointed counsel at a later stage of the case if Ms. Clark chooses to file an amended complaint.

### III.    CONCLUSION

For the above-stated reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. Dkt. 20. Ms. Clark's state law claims are dismissed WITH PREJUDICE since they are barred by absolute immunity. Her Section 1983 claim against Defendant Washington State Department of Health is also DISMISSED WITH PREJUDICE as barred by the Eleventh Amendment. The motion is DENIED as to Ms. Clark's remaining claims.

In addition, Ms. Clark's motion to appoint counsel is DENIED (Dkt. 21). The Court sua sponte orders The Clerk to (1) email a copy of the complaint and summons for the Washington State Department of Health, along with a copy of this order, to serviceATG@atg.wa.gov; and (2) send a copy of plaintiff's complaint, a copy of this Order, two copies of the notice of lawsuit and request for waiver of service of summons, and a waiver of service of summons, by first class mail with a return envelope, postage prepaid, addressed to the Clerk's Office, to the individually named defendants, in the care of defense counsel at the address listed in their notice of appearance. (Dkt. 19 at 2):

> Angie Schulz
> Acting Credentialing Assistant Manager
> Washington Department of Health
> c/o Janet Maria Cavallo
> ATTORNEY GENERAL'S OFFICE
> Torts Division
> 800 Fifth Avenue, Suite 2000
> Seattle, WA 98104-3188
>
> Scott Bramhall
> Health Care Investigator
> Washington Department of Health
> c/o Janet Maria Cavallo
> ATTORNEY GENERAL'S OFFICE
> Torts Division
> 800 Fifth Avenue, Suite 2000
> Seattle, WA 98104-3188
>
> Lori Targus
> Federal Background Lead
> Washington Department of Health

c/o Janet Maria Cavallo
ATTORNEY GENERAL'S OFFICE
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188

Tina Crawford
Health Services Consultant
Washington Department of Health
c/o Janet Maria Cavallo
ATTORNEY GENERAL'S OFFICE
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188

Erica Brown
Acting Deputy Credentialing Manager
Washington Department of Health
c/o Janet Maria Cavallo
ATTORNEY GENERAL'S OFFICE
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188

Kevin Taylor
Exceptions Unit Lead
Washington Department of Health
c/o Janet Maria Cavallo
ATTORNEY GENERAL'S OFFICE
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188

Because the Court finds that requesting waiver of service is appropriate, Ms. Clark's

motion for service of process by the U.S. Marshals is DENIED AS MOOT (Dkt. 23).

The Clerk is directed to send uncertified copies of this Order to all counsel of record and

to any party appearing pro se at said party's last known address.

ORDER ON MOTION TO DISMISS - 21

Dated this 30th day of May, 2024.

Tiffany M. Cartwright
United States District Judge