UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BROOKLYNN C. CLARK,<br><br>            Plaintiff,<br><br>     v.<br><br>WASHINGTON STATE DEPARTMENT OF HEALTH; ANGIE SCHULZ; SCOTT BRAMHALL; LORI TARGUS; TINA CRAWFORD; ERICA BROWN; AND KEVIN TAYLOR,<br><br>            Defendants. | Case No. 2:23-cv-01558-TMC<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL |

## I.   INTRODUCTION

Pro se Plaintiff Brooklyn C. Clark filed this lawsuit alleging that the Washington State Department of Health, through several of its employees, discriminated against her based on race and gender identity while processing her application for an emergency medical technician license. Before the Court is Defendants' motion for summary judgment, seeking dismissal of all of Ms. Clark's claims in this lawsuit, Dkt. 42, and Ms. Clark's renewed motion for appointment of counsel, Dkt. 51. Ms. Clark's motion for appointment of counsel is DENIED because she has failed to show that she has diligently pursued counsel and that she has a likelihood of success on the merits. Defendants motion for summary judgment is GRANTED because they have met their

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 1

initial burden to show that there are no genuine issues of material fact. And, in response, Ms. Clark has not offered any evidence to refute these contentions.

## II. BACKGROUND

In July 2023, Ms. Clark applied to the Washington Department of Health ("the Department") for a "license and/or certification" to work as an emergency medical technician in the State of Washington. Dkt. 44-1. She alleges that the Department and six of its employees unlawfully discriminated against her by withholding the certification because of her race and/or gender identity in violation of the Fifth Amendment to the U.S. Constitution. Dkt. 5. She brings her claim for a violation of the Fifth Amendment under 42 U.S.C. § 1983. *Id.*

The Department is charged with certifying emergency medical services (EMS) providers. Dkt. 42 at 3 (citing RCW 18.73.081). An individual's application is first reviewed by the Department's Credentialing Unit to assess if all requirements are met. Dkt. 46 ¶¶ 4–5. A credentialing specialist runs a background check on the individual, which for out-of-state applicants requires an FBI National Fingerprint Database search. *Id.* ¶¶ 8–9. If the Department receives notice from the search that the individual has a criminal history, the data is placed in a secured area that only a small subset of employees may access. *Id.* ¶ 11. The Background Check Unit then reviews the criminal history record to determine if the history bars the applicant from certification. *Id.* ¶ 12. Due to the confidential nature of the information, the applicant is often contacted for clarification. *Id.* ¶ 16. Once all information is gathered, the Case Management Team (CMT), a group of attorneys and other staff, review the information and make a final decision on whether to issue the certification. *Id.* ¶ 17.

On July 3, 2023, Ms. Clark submitted an application to be certified as an Emergency Medical Technician ("EMT") in Washington. *See generally* Dkt. 44-1. Ms. Clark, who is transgender, had "disclose[d] her previous name and gender" to the Department as part of her

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 2

application. Dkt. 5 at 7; Dkt. 44-1 at 2. On her application, Ms. Clark attested that she had never been "convicted, entered a plea of guilty, no contest, or a similar plea, or had prosecution or a sentence deferred or [suspended] as an adult or [juvenile] in any state or jurisdiction[.]" Dkt. 44-1 at 3. Because Ms. Clark lived in Oregon, *id.* at 2, the Department ran an FBI National Fingerprint Database search. Dkt. 46 ¶ 8; Dkt. 44-10. The background check returned an out-of-state criminal history record for Ms. Clark. Dkt. 45 ¶ 9.

Defendant Angie Schulz, then-Acting Credentialing Assistant Manager with the Background Check Unit, reached out to Ms. Clark to inform her of the results and explain the procedure for review. *Id.* ¶¶ 3, 10–11. Ms. Clark contested the results of the background check. *Id.* ¶ 11.

Throughout the credentialing process, Ms. Clark was in contact with several Department employees, both by phone and email. *See generally* Dkts. 44-2; 44-3; 44-4; 44-5. Ms. Clark had a call with Defendant Kevin Taylor, an employee in the Exceptions Background Check Unit. Dkt. 43 ¶ 3. Ms. Clark called while Taylor was in the "'secure room' processing fingerprint results." *Id.* ¶ 5. He had not spoken to Ms. Clark before. *Id.* Ms. Clark informed him that she did not have a criminal background, to which he responded that "something had come up" in the background check that "required some additional information." *Id.* Taylor informed Ms. Clark that they would require a document from the court and a letter of explanation detailing "the incident, what led up to the incident, and how it got resolved." *Id.* ¶ 6. Taylor recalls the conversation lasting about 20–40 minutes. *Id.* ¶ 7. Taylor had pulled up the application on the screen and was examining the background check results, which mentioned Ms. Clark's previous name (Curtis Clark). *Id.* ¶ 8. As the call began to wrap up, Taylor recalls the closing:

> Towards the end of the call it seemed like Clark wasn't getting what they wanted, because they suddenly said, "okay, well, goodbye." And I automatically ended the call by saying, without really thinking about it, "goodbye sir." It's a crutch phrase

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 3

without true meaning, just a way to end the conversation. I had Clark's information pulled up under her prior name "Curtis." Coincidentally, that is my brother's name. It was a genuine slip-up. Clark gave an insincere laugh and we hung up. . . .

As soon as we hung up I realized what had happened. I felt terrible about it. Because it was the end of the call, I did not have a chance to address it or apologize.

*Id.* ¶¶ 9–10.

Taylor talked to Ms. Clark on one other occasion. *Id.* ¶¶ 13, 16. Ms. Clark identified herself with her pronouns, and Taylor complied with her request. *See id.* ¶¶ 15, 17, 5 n.1.

After the incident, Ms. Clark told Schulz about what had happened and directed Schulz to "not call [her] Sir purposely just as your subordinate Kevin improperly did when we spoke." Dkt. 44-4 at 4. Schulz responded, "I apologize for any error that was made in addressing you." *Id.* at 3. The Department claims that "Ms. Clark was not misgendered subsequent to that acknowledgement and apology." Dkt. 42 at 7.

Even though Ms. Clark refused to provide an explanation for the background check results, her application was still referred from the Background Check Unit to CMT. *See, e.g.*, Dkt. 44-2; Dkt. 44-4. Schulz and others in the Department continued to request information from Ms. Clark, throughout July and August 2023, including documentation from the relevant court related to the results of her background check, and a letter of explanation. *See, e.g.*, Dkt. 44-5 at 3. Ms. Clark refused, explaining, "I [] have assisted your agency to the best of my ability and I'm simply asking you to complete your criminal background check as soon as possible. I have already provided you with everything I can." *Id.* On August 4, 2023, Schulz explained that Ms. Clark needed to request the court information because the Department could not. *Id.* at 2.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 4

On August 22, 2023, Defendant Katrina (Tina Crawford), a Health Services Consultant with the Department, sent a letter to Ms. Clark to notify her that her application was under review with the Office of Investigative and Legal Services. Dkt. 44-3. Defendant Scott Bramhall was the assigned investigator. Dkt. 48 ¶ 10. Because of Bramhall's role, he was able to request the necessary information from the Court directly. *Id.* ¶ 13. He sent a letter to Ms. Clark requesting her cooperation. *Id.* ¶ 20; Dkt. 44-8. It is unclear if she ever signed the letter. She did, however, provide other information. Dkt. 44-7 at 2–3; Dkt. 44-2 at 2; Dkt. 44-1 at 9.

Ms. Clark initiated this case while her application was still pending with the Department. Dkt. 1; Dkt. 42 at 11. Ms. Clark filed a motion to proceed *in forma pauperis* ("IFP") on October 6, 2023. Dkt. 1. On October 13, 2023, U.S. Magistrate Judge Brian A. Tsuchida granted the motion to proceed IFP and Ms. Clark's complaint was filed. Dkt. 4; Dkt. 5. The complaint alleges unlawful discrimination claims under Title VII of the Civil Rights Act of 1964 and RCW 49.60 and a claim under 42 U.S.C. § 1983 for a violation of her rights under the Fifth Amendment to the U.S. Constitution. *See* Dkt. 5 at 4, 7–9.

On November 6, 2023, Ms. Clark filed a motion asking the Court to appoint counsel to represent her in this lawsuit. Dkt. 7. Ms. Clark informed the Court that she had made efforts to retain counsel by contacting between four and six law offices and stated that she was unsure whether any state or federal agency has officially determined whether there is reasonable cause to believe that the allegations in her complaint are true. *Id.* at 2. The Court denied the motion. Dkt. 13. The Court explained that for Ms. Clark's Section 1983 claim, there were "no 'exceptional circumstances' justifying appointment of counsel. Ms. Clark's pleadings and filings thus far show an ability to articulate her claims and it is too early in the case for the Court to find a likelihood of success on the merits." Dkt. 13 at 3 (citation omitted).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 5

In March 2024, the Department and individual Defendants moved to dismiss Ms. Clark's complaint. Dkt. 20. On May 30, 2024, the Court granted the motion in part, dismissing Ms. Clark's state law claims and constitutional claims against the Department itself. Dkt. 28 at 20. The Court allowed her Title VII claim and her federal constitutional claims against the individual Defendants to proceed. *Id.* at 20. The Court also denied another motion to appoint counsel. *Id.*; Dkt. 21.

In the interim, the certification process continued. Dkt. 42 at 11. Ms. Clark eventually provided the necessary documentation about her criminal history. Dkt. 48 ¶¶ 25–26, 28. On September 20, 2024, the Department issued Ms. Clark her certification to work as an EMT in the state. Dkt. 45 ¶ 43.

On March 31, 2025, the Department moved for summary judgment. Dkt. 42. The Department argues that the case should be dismissed because 1) Ms. Clark's request for declaratory relief is mooted by her certification; 2) Ms. Clark has not shown any evidence of discrimination, which is fatal to her Section 1983 claims; and 3) Ms. Clark has not made out a prima facie Title VII case. *Id.* at 11–19. Ms. Clark responded on April 28, 2025. Dkt. 51. The Defendants replied the same day. Dkt. 52. The motion is ripe for the Court's review.

### III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be presumed. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Generally, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Consequently, in ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party . . . ." *Lujan*, 497 U.S. at 888 (internal quotations omitted).

### IV.   DISCUSSION

**A.   Motion to Appoint Counsel**

Ms. Clark has moved to appoint counsel twice before. Dkt. 7; Dkt. 21. In her response to Defendants' motion for summary judgment, Ms. Clark raises the issue again. Dkt. 51 at 3. She explains that she works two jobs, has been traveling often, and faces challenges with her mental health. *Id.* As a result, she argues that the matter has not been given "the proper attention that it deserves." *Id.* The Court understands Ms. Clark's concerns. But the Court's resources for appointing counsel are limited and must be reserved for those cases meeting the previously

mentioned requirements. Although the Court appreciates the information Ms. Clark has provided, her case does not currently meet those requirements.

As the Court has explained its previous orders, there is generally "no constitutional right to counsel in a civil case." *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038–39 (9th Cir. 2021) (internal citation omitted). But in employment discrimination cases arising under Title VII of the 1964 Civil Rights Act, the Court may appoint counsel "upon application by the complainant and in such circumstances as the court may deem just." 42 U.S.C. § 2000e-5(f)(1). When considering a request for counsel for Title VII claims, the Court assesses the applicant's financial resources, efforts the applicant has already made to secure counsel, and whether the claim has merit. *Bradshaw v. Zoological Soc'y of San Diego*, 662 F.2d 1301, 1318 (9th Cir. 1981). For Section 1983 claims, the Court asks whether "exceptional circumstances" exist that justify granting the request for counsel. *Amezquita v. Hough*, No. 21-56059, 2023 WL 4105307, at *2 (9th Cir. June 21, 2023) (quoting *U.S. ex rel. Gardner v. Madden*, 352 F.2d 792, 793 (9th Cir. 1965)).

The first Title VII factor favors appointment of counsel. Ms. Clark's IFP status indicates that she likely cannot afford to hire an attorney on her own. *See Kucuk v. Cent. Wash. Univ.*, No. C17-1262JLR, 2018 WL 513593, at *1 (W.D. Wash. Jan. 23, 2018). However, the second and third factors weigh against granting the motion. In her first motion, Ms. Clark stated that she had "contacted 4–6 law offices" in search of an attorney. Dkt. 7 at 2. The Court encouraged her to contact additional attorneys. Dkt. 13 at 3. Ms. Clark contacted a few more, "at least [ten]." Dkt. 21 at 1. But, in denying her second motion, the Court noted that, while it appreciated these efforts, appointment of counsel remained inappropriate because she had "only contacted a few additional attorneys since her last motion." Dkt. 28 at 19. Ms. Clark's third request does not attest that she has contacted any additional attorneys. *See* Dkt. 51 at 2–4. A plaintiff must show

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 8

that they have made a "reasonably diligent effort under the circumstances to obtain counsel." *Bradshaw*, 662 F.2d at 1319. Ms. Clark has not done so here.

Finally, as to the third factor, Ms. Clark, as explained below, has not shown that her claims have merit. The discovery period has ended, and Ms. Clark has not offered any evidence in support of her claims. *See generally* Dkt. 51.

As to Ms. Clark's Section 1983 claim, there are currently no "exceptional circumstances" justifying appointment of counsel. Ms. Clark's pleadings and filings thus far show an ability to articulate her claims. *See Amezquita*, 2023 WL 4105307, at *2 (citing *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997)).

Thus, the renewed motion for appointment of counsel is DENIED.

**B.      Motion for Summary Judgment**

As noted above, Defendants argue that there are no issues of material fact because there is no evidence of discrimination to support Ms. Clark's Section 1983 or Title VII claims. *See* Dkt. 42 at 13–16, 19. In response, Ms. Clark argues that the issuance of her license alone acknowledges that the Department and its employees erred and "either purposefully or negligently delayed (for 15 months) the rightful issuance of the Plaintiff's EMT license/certification . . . without a legal reason[.]" Dkt. 51 at 1. Ms. Clark repeats these same contentions throughout her response. *See generally id.* But Ms. Clark does not offer any facts to refute those in Defendants' briefing. *See generally id.*; *see also* Dkts. 42–48.

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255. But, if the moving party meets their initial burden, the non-moving party "may not rest upon the mere allegations or denials of their pleading; their response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 9

there is a genuine issue for trial." *Lumpkin v. SCORE Jail*, No. 223CV01080MJPTLF, 2024 WL 1198733, at *2 (W.D. Wash. Feb. 28, 2024), *report and recommendation adopted*, No. 223CV01080MJPTLF, 2024 WL 1193164 (W.D. Wash. Mar. 20, 2024) (citing Fed. R. Civ. P. 56(e)(2)).

"In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations." *Id.* at *3 (citing *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993)); *see Brooks v. Burlington N. R.R.*, 910 F. Supp. 505, 507 (W.D. Wash. 1995) ("[T]he non-moving party may not rest upon the mere allegations or denials of prior pleadings, but must set forth specific facts showing that there is a genuine issue for trial."). "The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might return a verdict in the non-moving party's favor based on that evidence." *Lumpkin v. SCORE Jail*, 2024 WL 1198733, at *3 (citing *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 728–29 (9th Cir. 2012)). If the nonmoving party fails to respond with specific facts, the Court may dismiss the case with prejudice. *See, e.g.*, *id.*; *Brooks*, 910 F. Supp. at 507; *King v. Clallam Bay Corr. Ctr.*, No. C11-5269-RBL-JRC, 2011 WL 5873057, at *1 (W.D. Wash. Nov. 21, 2011).

Ms. Clark has not produced any evidence that either shows discrimination or disputes any of the facts set forth in Defendants' motion. *See generally* Dkt. 51. The Court agrees, and Defendants concede, that Ms. Clark was misgendered by Defendant Taylor. But this alone is insufficient to create a genuine issue of material fact. Her response rests upon "mere allegations [and] denials." *Brooks*, 910 F. Supp. at 507. She does not "set forth specific facts showing that there is a genuine issue for trial." *Id.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 10

For example, Defendants explain, in detail and in multiple sworn affidavits, the reasons for the delay in considering Ms. Clark's application: she denied any criminal history, Dkt. 44-1 at 3; Dkt. 44-7 at 2; Dkt. 45 ¶¶ 11–12; she refused to comply with requests for her to obtain information related to her criminal history, *see* Dkt. 43 ¶ 24; Dkt. 44-7 at 2; Dkt. 45 ¶¶ 26–27; and she did not respond to a release form for her criminal history, Dkt. 44-2 at 4; Dkt. 44-4 at 2–3; Dkt. 48 ¶¶ 19, 23. Ms. Clark's response does not refute these facts. Rather, she asks the Court to consider whether it was "pure coincidence that the only application that got held up for over a year was also the only application submitted by a [B]lack, transgender woman in 2023[.]" Dkt. 51 at 4. But Ms. Clark does not provide information to support her claim that she was the only applicant whose approval was delayed for over a year. *See id.* And Defendants explain that "[i]f there is a deficiency, such as an unanswered question, or an incorrectly answered question, or paperwork that has not been submitted, it can take much longer, and delays for up to a year or more are not uncommon, depending on what the missing or incorrect information is." Dkt. 46 ¶ 31. Longtime employees attest in sworn affidavits that Ms. Clark's "refusal to cooperate caused the delay." Dkt. 45 ¶ 40; Dkt. 43 ¶¶ 24–25.

This case is similar to *Williams v. Glebe*, No. C12-5796 RBL, 2014 WL 3579652, at *2 (W.D. Wash. July 21, 2014). There, the plaintiff filed a civil rights action under Section 1983 challenging Defendants decision to not grant him minimum custody levels. *Id.* at *1. He argued that the denial was due to racial discrimination, in violation of his Fourteenth Amendment rights. *Id.* The defendants moved for summary judgment, explaining the eligibility criteria for the lowest levels of custody and detailing the reasons the plaintiff had failed to meet those criteria. *Id.* at *1–3. The plaintiff "did not respond and [did] not contest this assertion of fact in any meaningful way. Rather, he simply assert[ed] in the complaint that considering this information

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 11

[was] improper." *Id.* at *2. Plaintiff failed to respond to the factual allegations, which refuted his contentions. *Id.*

The court explained that "to withstand a motion for summary judgment, the non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Id.* at *3 (quoting *Anderson*, 477 U.S. at 250). And, the court noted, "if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Id.* (citing *Celotex*, 477 U.S. at 322–23). Because the plaintiff bore the burden of proving that the defendants had discriminated against him, he could no longer rest on the pleadings. *Id.* at *5 (citations omitted). Rather, he had to "come forward with evidence to support his allegation that race was a factor in the decision to deny him a lower level of minimum custody." *Id.* And, because plaintiff failed to do so, the Court dismissed the claims, explaining that there was "overwhelming evidence" of "valid reasons" for the denial. *Id.*

As explained above, the same is true here. Ms. Clark bears the burden of proving both her Title VII claims and her constitutional claims, but she has not come forward with any evidence of discrimination. Thus, the motion for summary judgment is GRANTED.

### V.   CONCLUSION

For these reasons, the motion for appointment of counsel is DENIED, Dkt. 51, and the motion for summary judgment, Dkt. 42, is GRANTED. The case is DISMISSED WITH PREJUDICE.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO APPOINT COUNSEL - 12

Dated this 21st day of May, 2025.

Tiffany M. Cartwright
United States District Judge